COLÓN, PLAINTIFF AND APPELLANT, v. PLAZUELA SUGAR
COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Arecibo in an Action of
Denial of Servitude.

No. 2758.—Decided December 23, 1922.

SERVITUDE — RIGHT OF WAY — RAILROAD — VERBAL PERMIT—CONSIDERATION.—A
mere verbal permit given by the owner of a property to the agents of a
sugar factory to lay private railroad tracks on the property for the trans-
portation of sugar cane, without consideration, or time limit, or conditions,
does not warrant a conclusion that a permanent servitude of right of way
was created on the property in favor of the sugar factory.

The facts are stated in the opinion.

*Mr. R. Agrait Aldea* for the appellant.

*Mr. H. Miranda* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action of denial of servitude. The plaintiff

alleged in synopsis that she was the owner of a farm property, which she described, situated in the ward of Islote, municipality of Arecibo, with her title recorded in the registry free of encumbrances. She alleged also that the defendant, the owner of a sugar factory, constructed and maintained a permanent track for the operation of private railroad trains over the property of the plaintiff without her authorization, and that she had demanded of the defendant that it cease to operate the said railroad.

The defendant denied the allegations of the complaint and alleged substantially as new matter that Jesús de León, from whom the plaintiff acquired the property, created in favor of the defendant a servitude of right of way and that when the plaintiff purchased the property in 1911 she had knowledge of the existence of the said servitude and never took any action to have the railroad removed.

The case was brought to trial. The evidence was examined and after discussing the law and the facts in a lengthy opinion the court concluded that the plaintiff purchased the property described in the complaint subject to a clear and apparent servitude of railroad right of way in favor of the Plazuela Sugar Company granted by the former owner of the property. The judgment of the court dismissed the complaint without special imposition of costs.

Feeling aggrieved by that judgment, the plaintiff raised this appeal and assigned the following errors in her brief:

"I. The District Court of Arecibo committed manifest error in dismissing the complaint and in holding (*a*) that a servitude was created by the former owners of the plaintiff's property in favor of the Plazuela Sugar Company, and (*b*) that the plaintiff is bound to respect and comply with, as an encumbrance on the property, the verbal permission given by the former owners of the property to the Plazuela Sugar Company for the construction of a railroad track and the operation of its trains.

"II. The District Court of Arecibo committed manifest error in not admitting at the trial, as the plaintiff's evidence in rebuttal,

the public deed of lease executed by Eulogia Colón Alvarez and Basilio Reyes, that deed having been offered as such evidence.''.

It was proved absolutely that the plaintiff acquired the property referred to free of encumbrances, according to her title deed which was and is so recorded in the registry; that the defendant is the owner of a private railroad which it uses for hauling sugar cane, and that tracks of that railroad were constructed on the property of the plaintiff with the verbal consent of its former owners about the year 1906 and have been used by the defendant since that time.

The fundamental question to be considered is, then, whether by virtue of the permission given by the former owners of the property there was created on the property a servitude in favor of the defendant which the plaintiff is bound to respect.

Her ownership right free of encumbrances having been proved by the plaintiff, the burden was on the defendant to show the existence of its title. For that purpose it introduced only parole evidence. Its first witnesses were Jesús de León and his wife María, the former owners of the property from whom the plaintiff directly and immediately took her title. Jesús de León testified in part as follows:

"Q. Who authorized the construction of that railroad track on the property?—A. I did. * * *

"Q. Who asked your consent to the construction of that railroad track on the property?—A. Basilio Reyes and Julio Rodríguez.

"Q. Who is Julio Rodríguez?—A. The engineer who had charge of the construction of the track on the property.

"Q. Who sent that engineer?—A. The manager of the Plantation. * * *

"Q. What was the consideration for that right of way?—A. I gave that right of way because then the sugar cane, the only product that had a market value and could be sold, could not be transported and that property was not worth then as much as it is now, because nothing was grown on it but minor products which gave no profit. In order to grow sugar cane I had to find some means of transporting it and for that reason I consented to the right of way.

"Q. You consented to it in order to have a means of transporting the products of the property?—A. Yes.  *  *  *

"Q. Was Eulogia Colón present when you went to tell Tomás Boneta that you had given the right of way over the property?— A. She was present.  *  *  *

"Q. Is the track across the property clearly visible?—A. Yes. *  *  * "

His wife, María de León, testified in part as follows:

"Q. Does a railroad of the Plazuela Central pass over that property?—A. Yes.

"Q. How long has it been there?—A. About sixteen years. *  *  *

"Q. Do you remember whether at any time anyone went to ask you and Jesús de León for permission to construct that railroad track?—A. Yes.  *  *  *

"Q. Did you and your husband give the consent?—A. Yes.

"Q. You agreed to the construction of the track? — A. Yes. *  *  *

"Q. Did you see the trains running on the track later?—A. Yes.

"Q. About how long were you there?—A. We left the property eight years ago."

Julio Rodríguez and Basilio Reyes, the persons who requested and obtained the permission in the name of the defendant, also testified. The former said in part:

"Q. Did you ever have any business relations with Jesús de León and his wife?—A. Yes; when we went to ask their consent to the construction of the railroad over their property.

"Q. Has the running of the trains over that track on the property of Jesús de León ever been interrupted?—A. Never.

"Q. How long have they been in operation?—A. The construction of the track was begun in 1905 and finished in 1906 when the trains were first operated.  *  *  * "

Basilio Reyes was interrogated at greater length and his testimony was in part as follows:

"In answer to questions by the Court he testified:

"Q. In what capacity did you go to ask León and his wife for a grant of the right of way?—A. The Plazuela Company commis-

sioned me to secure not only that right of way, but a right of way from all of the property owners of the ward.

"Q. For whose benefit?—A. For the benefit of the Plazuela Sugar Company and of the planters.

"Q. In what way was that contract made for the right of way over the property?—A. We asked for it because it was something favorable to the ward.

"Q. In what way did they make the concession?—A. We asked for it and were authorized to construct the track.

"Q. Verbally?—A. Yes.

"Q. Nothing was put in writing?—A. I think not.

"Q. To whom did you speak?—A. To Jesús de León and his wife, and Julio Rodríguez, who went with me spoke to them also.

"Q. Did that contract benefit them in any way and was anything paid for it?—A. At that time no price was fixed for it.

"Q. Did they ask to be paid?—A. No.

"Q. Then in what way did they grant the right of way; for what length of time?—A. No length of time was stipulated and as there was no means of communication, it was a benefit to all.

"Q. Please be more explicit regarding the concession. Recall what you said to them and what they agreed to.—A. We told them that the railroad was an advantage to all—to the properties there— and explained to them regarding the benefit that it could be to all.

"Q. And what did they say?—A. They consented to the construction of the track over the property.

"Q. They consented to the construction of the track?—A. Yes.

"Q. How did they answer?—A. That they agreed to allow the construction of the track over the property.

"Q. There was no agreement as to time?—A. No. After having spoken about that, of the benefit that the railroad would bring, they said that they agreed to allow its construction.

"Q. Neither you nor they fixed any length of time?—A. No; I remember none.

"Q. Was it limited or unlimited?—A. There was no time limit.

"Q. You never spoke to them again about it?—A. No.

"Q. And they made no claim?—A. None that I know of. I do not know whether they made any to the Plazuela Company.

"Q. And before this there was no claim made by anybody?—A. Now.

"Q. Before this?—A. None.

"Q. And they continue to pass there?—A. Yes.

"Q. All?—A. Yes, all.

"Q. All of that part?—A. All of the property owners.

"Q. The track is still there?—A. Yes.

"Q. The trains are running?—A. Yes.

"Questioned by attorney Miranda he testified as follows:

"Q. Do you remember whether you discussed the advantage that it would be to Jesús de León to send his cane over that railroad?—A. Certainly.

"Q. Did you say that it would benefit him?—Yes.

"Q. Before that he had not planted sugar cane?—A. No.

"Q. And he planted it afterwards?—A. Yes.

"Q. How did he send it out?—A. By that railroad."

Maximino Felicié testified to the continuous existence of the track used for the railroad since 1906 and José R. Roberts testified that Eulogia Colón had made no claim whatever except this suit during the period of five years that he had been the manager of the factory of the defendant.

That was all of the defendant's evidence. Accepting the testimony of the witnesses as true, can it be concluded that the defendant showed its right to continue to use the track constructed on the property of the plaintiff against her will? Did the defendant prove the existence of the servitude denied by the plaintiff?

All of the facts of this case occurred since the Revised Civil Code went into effect. According to the said Code, a servitude is a charge imposed upon an immovable for the benefit of another tenement belonging to a different owner. Servitudes may be continuous or discontinuous, apparent or not apparent. Continuous and apparent servitudes are acquired either by virtue of a title or by prescription after twenty years. Continuous and not apparent servitudes and discontinuous servitudes, either apparent or not apparent, can only be acquired by virtue of a title.

It is not necessary to consider whether or not the district judge mistakenly classified the servitude in this case. There is no question of prescription. Admitting that the railroad

track was contructed in 1905, the complaint was filed within the twenty years required by law. Therefore, the existence of the servitude in this case could be shown only by proving a, title.

We agree that it is not absolutely necessary that the contract should be in writing. Although it is proper and usual to set out in writing contracts of this nature which are recordable, and generally to record them in the registry, yet we admit that they may be made verbally and proved by parole evidence; but, of course, that evidence must be clear, exact, complete and strong.

In our opinion the evidence shows that in the year 1905 the defendant's representatives approached De León and his wife, the owners of the property, and by explaining to them the advantages that they would derive from the construction of a railroad which the defendant had in project through the ward in which the property was situated to be used for hauling sugar cane, obtained their permission to lay a part of the railroad track on the property. No price was paid. No time was fixed, or even spoken of. The track was constructed and the railroad was put in operation without objection on the part of De León and his wife. At no time did they specify the extent of the permission given and when six years later they sold the property to the present owner, the plaintiff, they stated in the deed of sale that the property was free of encumbrances. The plaintiff took possession of the property under that title and there is evidence tending to show that in 1913 she expressed her opposition to the existence of the railroad. A certain deed of lease in which something appears to have been stated about the attitude of the plaintiff with regard to the railroad was not admitted in evidence by the court. At any rate, for the solution of the juridical problem involved regarding the knowledge and acts of the plaintiff the following basis may be taken: The plaintiff knew of the existence of the private railroad track

constructed in 1905 with the consent of the former owners of the property. In selling the property to the plaintiff the said former owners assured her that there was no encumbrance on it. It so appeared then and so appears now from the registry. The plaintiff took possession of the property and tolerated the railroad until she brought this action denying the servitude and praying the court to order that the track be removed, inasmuch as the defendant refused to remove it voluntarily.

This being the result of the evidence, the conclusion of the district court on which its judgment is based is clearly erroneous. The defendant called as a witness at the trial the person with whom it said it had contracted. It had an opportunity to interrogate that person fully about all of the conditions of the contract and did not do so. It merely proved that the said person had consented to the construction of the track across his property. This is not a case of a public or quasi-public railroad, but of a purely private one. A servitude of right of way generally involves the deprivation of the owner of the servient tenement of the use of the land occupied. A railroad track like that of the defendant may be constructed and is sometimes constructed for a single crop or for several crops, but it does not necessarily carry with it the idea of permanency.

The defendant also called its own agents as witnesses. When the last one testified and finished answering the vague and obscure questions of the attorney for the defendant, the judge wished to investigate the matter more fully and we have transcribed the testimony brought out by him. In giving the permission nothing was said about the length of time of its duration. No price was paid, nor was there any other specific compensation. The only consideration adduced is the probable increase in the value of the property on account of the opportunity to grow sugar cane and convey it to the defendant's factory. A servitude of right of way,

which is one of the strongest encumbrances that can be imposed upon a property, is not established in that manner.

The doctrine laid down in the case of *Torres et al.* v. *Plazuela Sugar Company,* 24 P. R. R. 451, is perfectly applicable. The defendant not only failed to prove a real title to the servitude acquired from the former owner, but also it could not have invoked the doctrine of equitable estoppel against him. The facts in this case are different from those which served as a basis for our decision in the case of *Vélez et al.* v. *Guánica Centrale,* 26 P. R. R. 724.

Summarizing the American jurisprudence on this question, Cyc. says:

"A mere license which is nothing more than a personal privilege is revocable at the pleasure of the licensor, and the fact that the license was created by a written instrument, or even conferred by deed, does not affect the rule of revocability at the option of the licensor.

"In a number of the states, when the licensee has acted under the authority conferred and has incurred expense in the execution of it, by making valuable improvements or otherwise, equity regards it as an executed contract and will not permit it to be revoked, regarding it substantially as an easement, the revocation of which would be a fraud on the licensee. But upon principle these cases can be supported only on the ground that what was called a license was something more than a mere license. In many cases the license is connected with a grant, and then the party who has given it can not in general revoke it so as to defeat his grant to which it was incident. In other cases there was not a mere license, but an oral agreement to grant an easement, followed by permanent and substantial improvements made upon faith of the agreement, which equity regards as sufficient part performance to take the case out of the statute of frauds, and some cases proceed avowedly on these grounds. According to the better opinion, however, when nothing more than a mere oral license appears, it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements. To hold otherwise would be to override the statute of frauds and convert an executed license into an estate in land, which is going a greater length than equity ever

went under the doctrine of part performance; nor does the case involve any matter of estoppel *in pais* against the licensor or render him liable to an action for damages.

"According to the weight of authority the fact that a valuable consideration is given for a license does not render it irrevocable, although there are some decisions to the contrary." 25 Cyc., pp. 645–649.

And if that is so in regard to the former owners, it is much more so with respect to the present owner with whom the defendant did not contract and who acquired the property free of encumbrances and merely tolerated the existence of the railroad until she expressed her opposition to it. Acts merely tolerated do not affect possession. Civil Code, sec. 446.

It is not necessary to consider the second assignment of error. The judgment appealed from should be reversed and the complaint sustained, but allowing the reasonable period of six months from this date for the removal of the track, with the costs against the defendant.

*Reversed.*

Justices Aldrey and Hutchison concurred.

Justices Wolf and Franco Soto took no part in the decision of this case.